UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KENNETH WILLIAMS,

                Plaintiff,                   Case No. 1:13-cv-444

v.                                    Honorable Robert Holmes Bell

RICHARD DAVENPORT et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corizon, Prison Health Services, American Service Group, Inc., Smith, Birkett, Finn, Fighter, Clifford, Humphreys, Buchanan, Dewald, Kipp and Krick. The Court will serve the complaint against Defendants Davenport and Sivec.

## Discussion

I.    Factual allegations

Plaintiff Kenneth Williams (a/k/a Kenneth Terrell Beard Bey©) presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF).  The actions about which Plaintiff complains occurred while he was housed at DRF and multiple other facilities:  (1) the Mid-Michigan Correctional Facility or Pine River Correctional Facility, now known as the Central Michigan Correctional Facility (STF); the St. Louis Correctional Facility (SLF); the Woodland Correctional Facility (WCC) (a mental health facility); and the Bellamy Creek Correctional Facility (IBC).   Plaintiff sues the following DRF officials: Psychologists Richard Davenport and Betsey Sivec; Warden Willie Smith; Officers (unknown) Dewald, (unknown) Humphreys, and (unknown) Buchanan; and Assistant Deputy Wardens (ADWs) (unknown) Kipp and (unknown) Krick.  He also sues the following STF employees:  Assistant Resident Unit Supervisor (ARUS) Terri Fighter; Assistant Resident Unit Manager (ARUM) Tina Finn; Sergeant (unknown) Clifford; and Warden T. Birkett.  He also names IBC Corrections Officer (unknown) Hickok.[1]   Finally, Plaintiff sues Corizon/Prison Health Services/American Service Group, Inc.[2]

---

[1]Two weeks after he filed his complaint, Plaintiff filed a motion to amend, seeking to dismiss Officer Hickok as a Defendant in the action because Hickok had never received notice of Plaintiff's intent to file a complaint.  Because plaintiffs are permitted to amend their pleadings once as a matter of course, *see* FED. R. CIV. P. 15(a), Plaintiff's motion to amend (docket #7) is granted, and Defendant Hickok will be voluntarily dismissed without prejudice.

[2]Corizon is a prison health care company formed in 2011 by the merger of Prison Health Services, Inc. and Correctional Medical Services, Inc.  *See* June 13, 2011 Corizon Press Release, http://www.corizonhealth.com/Corizon-News/Corizon-Launches-From-Correctional-Healthcare-Merger1.  American Service Group, Inc., however, is not part of that merger. The Court therefore has listed each of the companies as separate Defendants.

Plaintiff alleges that he has received psychiatric care since 2006 for recurring anxiety and panic attacks.  In 2011, while Plaintiff was housed at STF, he was regularly harassed by officers for his use of the Uniform Commercial Code (UCC) in his legal proceedings.  He complains that, when he tried to send UCC materials to be filed with his federal habeas corpus filing, the UCC materials were confiscated by Defendants Fighter and Finn, causing Plaintiff to miss an unspecified filing deadline.  After this, Plaintiff allegedly received threats from staff, such as a statement by Resident Unit Manager (RUM) Scott, who is not named as a Defendant, suggesting that Plaintiff would be sent home in a body bag.  On May 16, 2011, Defendant Clifford confiscated Plaintiff's paperwork and wrote a misconduct ticket against Plaintiff for possessing UCC materials and inciting a riot, ostensibly on the basis of Plaintiff's written statement that he did not believe prisoners should work for money, but should work for good time.  Plaintiff was transferred to Level IV at SLF, where RUM Scott, who allegedly threatened Plaintiff, had friends.  Plaintiff began to experience severe panic attacks and ate only bread, milk and juice because officers allegedly were tampering with his food.

When Plaintiff told the psychologists what was happening, they transferred Plaintiff to the WCC.  Once there, Plaintiff felt safe, but he was told that he could not remain at the facility, as he was not really mentally ill, only suffering panic attacks.  Plaintiff was then transferred to IBC on June 21, 2011, where he was asked by Officer Martinez, who is not a Defendant in this action, about his misconduct ticket for inciting to riot.  Martinez indicated that he intended to call STF to determine where they wanted Plaintiff placed.  Plaintiff was placed in segregation until June 26, 2011.  Thereafter, Plaintiff allegedly was harassed by unknown officers.  In September 2011, an unknown prisoner came into Plaintiff's cell with a lock attached to a rope.  The prisoner swung the

lock, hitting Plaintiff in the head.  Plaintiff then struggled with the prisoner. After Plaintiff broke

free, he ran to the officers' station and told Defendant Hickok that he had been attacked.  Hickok

ordered Plaintiff back to his cell and, when Plaintiff did not comply, wrote a misconduct ticket for

disobeying a direct order.  Plaintiff apparently was convicted of the misconduct charge, as he was

placed in segregation and lost ten days of privileges.  He then was transferred to DRF.

On November 28, 2012, while Plaintiff was housed at DRF, he experienced a severe

panic attack, took 30 Motrin pills, and blacked out.  He was rushed to the Carson City Hospital for

treatment.  After he was stabilized, Plaintiff was returned to DRF, where he was placed in the

observation cell for three days, under the treatment of Defendant Davenport.  Plaintiff alleges that

his depression worsened while he was in observation.  He experienced nausea and headaches and

found it difficult to eat.  While he was in the observation cell, ARUS Beecher and Defendant Krick

visited Plaintiff and told him, "I bet you won't write anything else, will you Mr. Incite to Riot."

(Compl., docket #1, Page ID#10.)  After three days, Plaintiff was returned to the general population.

On January 9, 2013, Plaintiff was in the presence of an acquaintance and fellow

inmate, prisoner "Threat."  (*Id.*, Page ID#6.)  Threat told Officer Rosale that he intended to write a

grievance against Rosale for bringing drugs into the facility.  Threat was transferred to another

facility.  Because Plaintiff was associated with Threat and present during the incident, unnamed

officers and prisoners began spreading the rumor that Plaintiff had snitched on officers and the gang

that was receiving drugs.  Plaintiff heard that gang members were going to stab him.  On January 12,

2013, Plaintiff had another severe panic attack, took another 15 to 30 pills, and was again rushed to

Carson City Hospital.  After being stabilized at the hospital, Plaintiff was brought back to DRF and

placed in an observation cell.  Defendants Davenport and Sivec visited Plaintiff while he was in the

-4-

observation cell, and Plaintiff explained what led him to have the attack. Davenport and Sivec left the room and returned with Sergeant Dunnigan, who is not a Defendant in this action. Dunnigan allegedly tried to cover-up the allegations, sternly saying to Sivec, "You['re] in here writing this stuff down?" (*Id.*, Page ID#7.) Sivec looked timid and denied writing it down. Thereafter, Sivec and Davenport allegedly acted like the events had never occurred.

Plaintiff alleges that he already had filed a grievance against Davenport because Davenport had failed to send Plaintiff to a Self-Mutilation Prevention Unit after his first suicide attempt, as allegedly required by MICH. DEP'T OF CORR., Policy Directive 04.06.180. Davenport allegedly came to see Plaintiff in observation, stating, "I can do one of three things. I can send you back to general population to deal with your situation (threatening), or I can send you to Woodland Correctional Center (WCC) to get some help, or I can just let you sit here and rot. Yeah, that's what I'll do. Let you sit in here and think about writing another grievance." (*Id.*, Page ID#7.) Plaintiff remained in the observation cell for 20 days, during which he was denied soap with which to wash his hands, was required to eat with his hands, and was not permitted to shower, except on one occasion. Plaintiff developed itching rashes on his arms and legs. His depression worsened, and he cut a vein on his left wrist.

Plaintiff complains that, while he was in the observation cell, he was regularly harassed by Defendant Humphreys and Humphreys' friend, Officer Rosale, who allegedly was bringing drugs into the institution.[3] Plaintiff claims that his state of panic rose to the point that he

---

[3] Plaintiff has filed a motion to clarify his complaint (docket #8), in which he states that he has not personally observed either Humphreys or Rosale (spelled "Rossell" in the motion to clarify) selling drugs. Plaintiff states that he only raised the allegations in order to show the events leading to his mental breakdown. He expressly states that the truthfulness of the allegations of drug smuggling has no bearing on his complaint. Upon consideration, the Court grants Plaintiff's motion to clarify.

smeared his own feces on the window of his cell.  Buchanan told Plaintiff to wipe his feces off the window or he would not be fed.  Plaintiff explained that he did not have anything with which to wipe the window.  Humphreys then left the cell without feeding Plaintiff.  Buchanan wrote a misconduct ticket against Plaintiff for not wiping his feces off the window.  The next day, Defendant Dewald came to hear Plaintiff on the ticket.  Dewald gave Plaintiff a rag and told him to wipe his window.  Plaintiff explained that he did not have any gloves, sanitizer or soap.  Dewald replied, "So what, it's your shit.  Now clean it."  Plaintiff states that he "replied[4]  with the order for threat of tickets and withheld meals." (*Id.*, Page ID#8.)  Plaintiff subsequently broke out in severely itching rashes on his arms and legs.  On March 1, 2013, Defendant Dewald allegedly told Plaintiff, "You're gonna get a chance to see what we do to your kind up North."  (*Id.*)  Plaintiff construed the statement as a threat of transfer to a northern Michigan prison where he would be treated badly, though, as of this time, he has not been transferred.

Plaintiff alleges that Defendants Kipp and Krick retaliated against him for filing a grievance against Officer Nicewander,[5] who had purposely slammed Plaintiff's hand in the cell door in retaliation for Plaintiff's use of Uniform Commercial Code materials.  Plaintiff claims that Kipp and Krick held him in a Level IV prison, rather than a Level I prison more appropriate to his limited misconduct history.  He alleges that his improper placement in a Level IV facility increased his danger and caused more severe anxiety attacks.

---

[4]It appears that Plaintiff intends to allege that he "complied" rather than "replied."

[5]Officer Nicewander is not named as a Defendant in this case, and no further mention of Nicewander or the incident is contained in the complaint.

Plaintiff seeks injunctive relief in the form of a transfer to his true security level (Level I) at a facility at which he would feel safe and an order directing the MDOC to pay for an outside psychologist.  He also seeks compensatory damages in the amount of $10 million.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Corizon, Prison Health Services, American Service Group, Inc., Smith and Birkett

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064,

2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Corizon, Prison Health Services, American Service Group, Inc., or Wardens Smith and Birkett in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, even assuming that Plaintiff intended to suggest that these Defendants were responsible for the actions of their subordinates, his allegations would fail. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *see also Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–818 (6th Cir. 1996) (holding that *Monell*'s bar to respondeat superior liability applies to private health corporations providing prisoner medical services). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Corizon, Prison

Health Services, American Service Group, Inc., Smith and Birkett engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

**B.      Defendants Finn & Fighter**

Plaintiff alleges that, sometime during the period Plaintiff was housed at STF, Defendants Fighter and Finn confiscated certain UCC materials that Plaintiff intended to file with his federal habeas corpus petition.  Plaintiff alleges that he missed an unspecified filing deadline as a result of the interference.  Arguably, Plaintiff intends to raise a claim that Finn and Fighter interfered with his right to access the courts.  Alternatively, Plaintiff may intend to argue that he was deprived of his property without due process.  Plaintiff fails to state a claim against Finn and Fighter under either legal theory.

1.      Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts,

a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[6] the complaint

---

[6]Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently
(continued...)

must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Although Plaintiff broadly alleges that he missed a filing deadline in his habeas case, he does not allege that he was prevented from filing his habeas action. Instead, he alleges that he was prevented from submitting UCC materials with his habeas application and that "[h]e has a right to use any real law that may bring about liberty and justice." (Compl., Page ID#9.)

Plaintiff fails to allege actual injury to a non-frivolous legal claim. The Uniform Commercial Code regulates the law of sales and other commercial transactions. It is wholly irrelevant to a prisoner's claim of entitlement to release from prison in a habeas corpus proceeding. To the extent Plaintiff's habeas petition raised a claim under the UCC, therefore, it was frivolous. *See Carter v. Wands*, 431 F. App'x 628, 629 (10th Cir. 2011) (affirming dismissal of petition claiming that the UCC provided a basis for habeas relief); *McNeil-El v. Diguglielmo*, 271 F. App'x 283 (3d Cir. 2008) (affirming dismissal of an access-to-the-courts claim based on the confiscation of UCC materials intended to be filed in a criminal appeal); *Brzezinski v. Smith*, No. 12-cv-14573, 2013 WL 2397522, at *3 (E.D. Mich. May 31, 2013) ("The UCC speaks only to commercial law and does not provide a proper basis for appealing a criminal conviction, writing a habeas petition, or bringing a civil rights action. . . . Any appeal, habeas petition, or civil rights action that relied on the

---

[6](...continued)
denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

UCC would be frivolous."). As a consequence, Petitioner has failed to demonstrate that Defendants Fighter and Finn caused actual injury to a nonfrivolous legal action when they confiscated Plaintiff's UCC materials.

2.    Due Process

Plaintiff also arguably complains that Defendants Finn and Fighter deprived him of his personal property, the UCC materials, without due process of law. Plaintiff's due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Plaintiff has not alleged that Michigan post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy

Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process against Finn and Fighter will be dismissed.

## C.     Defendant Clifford

Plaintiff complains that, on May 16, 2011, Defendant Clifford improperly confiscated a variety of Plaintiff's paperwork, including UCC materials, social security numbers, family information and legal contacts. Clifford also confiscated Plaintiff's journal. Plaintiff appears to allege that the taking was without due process. He also alleges that Clifford issued a "bogus" misconduct ticket for incitement to riot based on Plaintiff's writings. (Compl., Page ID#9.) Plaintiff acknowledges that the ticket also cited Plaintiff's improper possession of UCC materials.

For the reasons discussed *supra*, Plaintiff is barred by the doctrine of *Parratt*, 451 U.S. at 537, from raising a due process claim about the taking of his property.

To the extent that Plaintiff claims that Clifford filed a false misconduct charge against him, he also fails to state a due process claim. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal

-14-

procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

        Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[7] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's

---

[7]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

-15-

constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, Plaintiff may nevertheless be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. As a consequence of his misconduct charge, Plaintiff was placed in segregation for a brief period. Generally courts will consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 793. In *Sandin*, the Supreme Court concluded that disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g., Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship"). Plaintiff spent only a few days in segregation as the result of the misconduct conviction. His segregation therefore was

-16-

neither atypical nor significant in relation to the ordinary incidents of incarceration. He therefore had no protectible interest in his misconduct proceedings.

Moreover, even if Plaintiff had a due-process interest in not being falsely charged with a misconduct, the Sixth Circuit recently has held that a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt in a misconduct hearing. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013). Plaintiff acknowledges that he was convicted of the misconduct ticket. As a consequence, Plaintiff may not bring a claim challenging the validity of the misconduct charge.

For all of these reasons, Plaintiff's allegations against Defendant Clifford fail to state a claim.

### D.     Defendants Humphreys, Buchanan and Dewald

Plaintiff alleges that Humphreys verbally harassed him while he was in the observation cell. On January 19, 2013, Plaintiff smeared feces on his cell window. When Humphreys and Buchanan came to Plaintiff's cell to deliver lunch, Humphreys saw the mess and told Plaintiff to clean the window or he would not be fed. When Plaintiff did not clean his window, Humphreys did not give Plaintiff his lunch. In addition, Humphreys issued a misconduct ticket against Plaintiff for refusing to clean up. Plaintiff complains that Humphreys and Buchanan were both aware that Plaintiff did not have cleaning materials in the observation cell and was unable to comply with the order. The following day, Defendant Dewald came to Plaintiff's cell to review the ticket. Dewald gave Plaintiff a rag and told him to clean the window or he would continue to get tickets. Plaintiff apparently cleaned the window. The only other allegation against Defendant

Dewald is that, on March 1, 2013, Dewald made a remark suggesting that Plaintiff would be moved up north.

Plaintiff appears to raise an Eighth Amendment claim against Defendants Humphreys, Buchanan and Dewald. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

To the extent that Plaintiff complains that he was left in his cell for a day after he had smeared feces on his window, Plaintiff fails to state a claim. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter Cnty. Jail*, 816 F.2d 682 (6th Cir. 1987)). Here, according to Plaintiff's allegations, he smeared his own cell window with feces and was left in that cell for one day without the materials to clean it. He then was required to clean it up with a rag and may not have had all of the cleaning products he would have liked. While unpleasant, the deprivation was only a temporary inconvenience that did not rise to the level of an Eighth Amendment violation.

Similarly, Plaintiff's allegation that Humphreys refused to give Plaintiff his lunch on one day falls short of stating an Eighth Amendment claim. One instance of missing a food tray does not violate the Eighth Amendment. *See Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (single deprivations of books, linens, food trays and mail does not state an Eighth Amendment claim); *Evans v. Capello*, No. 2:12-cv-135, 2012 WL 1611227 (W.D. Mich. May 8, 2012) (one instance of missing a food tray does not rise to an Eighth Amendment claim). Because Plaintiff has alleged only a temporary inconvenience, his allegation against Humphreys based on the denial of his lunch meal fails to state a claim. *See Dellis*, 257 F.3d at 511.

Finally, Plaintiff complains that Defendant Humphreys verbally harassed him and Defendant Dewald made comments suggesting that Plaintiff would be transferred to a northern prison.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d at 954-55 (pg.18); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Humphreys and Dewald arising from their alleged verbal abuse.

## E.     Defendants Kipp and Krick

Plaintiff alleges that ADWs Kipp and Krick improperly placed him in Level IV security, though his disciplinary history warranted placement in Level I housing.  He alleges that

their actions were taken in retaliation for Plaintiff's filing of a grievance against DRF Corrections Officer Nicewander, who allegedly slammed Plaintiff's hand in his cell door to punish Plaintiff's use of the UCC.

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due-process claim against Defendants Kipp and Krick.

In addition, Plaintiff fails to allege facts supporting his claim that Defendants' classification decision was retaliatory. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

action was motivated, at least in part, by the protected conduct.  *Id.* at 394.  Moreover, a plaintiff

must be able to prove that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, the Court assumes Plaintiff was engaging in

protected conduct when he used UCC materials[8] and that his placement in Level IV confinement is

sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.[9]

Plaintiff, however, has wholly failed to allege facts that would support an inference of retaliatory

motive.  It is well recognized that "retaliation" is easy to allege and that it can seldom be

demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D.

Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation

is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*,

420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also*

*Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations

of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693,

---

[8]As the Sixth Circuit discussed in *Jones v. Caruso*, 569 F.3d 258, 271-75 (6th Cir. 2009), while some uses of UCC materials are protected by the First Amendment, UCC materials also can be used to for unprotected purposes, such as filing fraudulent liens against prison officials.

[9]Not all classifications and transfers constitute adverse action.  "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  Nevertheless, some transfers, including transfers to severely restricted settings, may be sufficiently deleterious to constitute adverse action.  *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action) (citing *Siggers-El*, 412 F.3d at 701-02).

-22-

1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Defendants Kipp and Krick retaliated against him because he filed a grievance against Nicewander, one of DRF's many corrections officers.  He has not alleged that Kipp and Krick had a particular connection to Nicewander or were even aware of the grievance.  He has not even alleged temporal proximity between the filing of his grievance and the date of Kipp and Krick's action.  *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (recognizing that, while simple allegations of temporal proximity are not ordinarily sufficient to demonstrate retaliatory motive, temporal proximity may sometimes be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive'") (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  Accordingly, Plaintiff's allegations of retaliation by Defendants Kipp and Krick are insuffient to state a claim.

## F.  Remaining Defendants Davenport and Sivec

Upon preliminary review, the Court concludes that Plaintiff's allegations against Defendants Davenport and Sivec are sufficient to warrant service of the complaint.

## <u>Conclusion</u>

Plaintiff's motion to amend the complaint (docket #7) is granted, and Defendant Hickok is voluntarily dismissed from the action.  In addition, Plaintiff's motion to clarify the complaint (docket #8) is granted, and Plaintiff's allegations have been construed in light of the clarification.  Further, having conducted the review required by the Prison Litigation Reform Act,

the Court determines that Defendants Corizon, Prison Health Services, American Service Group, Inc., Smith, Birkett, Finn, Fighter, Clifford, Humphreys, Buchanan, Dewald, Kipp and Krick will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Davenport and Sivec.

An Order consistent with this Opinion will be entered.

Dated: June 20, 2013                            /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE